1
2
3
4
5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

6
7
8
9
10

HEATHER WILSON,

        Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

        Defendant.

No.  1:14-CV-03174-RHW

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND REMANDING
FOR ADDITIONAL PROCEEDINGS**

11
12
13
14
15
16
17
18
19
20

        Before the Court are the parties' cross-motions for summary judgment, **ECF Nos. 13, 15.**  D. James Tree represents Heather Wilson ("Plaintiff" or "Claimant") and Special Assistant United States Attorney Catherine Escobar represents Defendant Commissioner of Social Security (the "Commissioner").  Plaintiff brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C §§ 401-434 and 1381-1383F.  Having reviewed the administrative record and briefs filed by the parties, the Court is now fully informed.  For the reasons set forth below, the

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 1**

Court grants, in part, Plaintiff's Motion for Summary Judgment, remands for

additional proceedings, and directs entry of judgment in favor of Plaintiff.

## I.    Jurisdiction

Plaintiff filed applications for DIB payments on May 3, 2011, and SSI

payments on August 5, 2011, alleging onset of disability on October 1, 2008. Tr.

191-97, 198-204.  Plaintiff's applications were initially denied on August 29, 2011,

Tr. 75-98, and on reconsideration on December 28, 2011, Tr. 99-124.  Plaintiff

requested a hearing before an Administrative Law Judge on February 15, 2012.

Tr. 146-147.  On February 13, 2013, Administrative Law Judge ("ALJ") Laura

Valente held a hearing in Seattle, Washington.  Tr. 30-74.  On April 12, 2013, the

ALJ issued a decision finding Plaintiff ineligible for both DIB and SSI payments.

Tr. 14-24.  The Appeals Council denied Plaintiff's request for review on

September 19, 2014, Tr. 1-5, making the ALJ's ruling the "final decision" of the

Commissioner.  Plaintiff timely filed the present action challenging the denial of

benefits, and accordingly, Plaintiff's claims are properly before this Court pursuant

to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 2**

can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  A claimant shall be determined to be

under a disability only if his or her impairments are of such severity that the

claimant is not only unable to perform previous work, but cannot, considering

claimant's age, education and work experience, engage in any other substantial

gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process

for determining whether a claimant is disabled within the meaning of the Social

Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v.*

*Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial

gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful

activity is defined as significant physical or mental activities done or usually done

for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in

substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§

404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination

of impairments, that significantly limits the claimant's physical or mental ability to

do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe

impairment is one that lasted or is expected to last for at least twelve months, and must be proven by reference to objective medical evidence.  20 C.F.R. §§ 404.1508-09 & 416.908-09.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  If the claimant can still perform past relevant work, then the claimant is not entitled to disability benefits and the inquiry ends there.  *Id.*  If the claimant cannot perform past relevant work, the ALJ must proceed to step five.

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 4**

claimant's age, education, and work experience.  *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."

1  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*

2  *v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

3        In reviewing a denial of benefits, a district court may not substitute its

4  judgment for that of the ALJ.  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.

5  1992).  If the evidence in the record "is susceptible to more than one rational

6  interpretation, [the court] must uphold the ALJ's findings if they are supported by

7  inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104,

8  1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

9  2002) (if the "evidence is susceptible to more than one rational interpretation, one

10  of which supports the ALJ's decision, the conclusion must be upheld").  Moreover,

11  a district court "may not reverse an ALJ's decision on account of an error that is

12  harmless." *Molina*, 674 F.3d at 1111.  An error is harmless "where it is

13  inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115.

14  The burden of showing that an error is harmful generally falls upon the party

15  appealing the ALJ's decision.  *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

16                    **IV.    Statement of Facts**

17        The facts of the case are set forth in detail in the transcript of proceedings,

18  and only briefly summarized here.  Plaintiff was born on October 21, 1975, and

19  was 37 years-old on the date of the hearing.  Tr. 33.  Plaintiff completed high

20  school and attended two years of college, Tr. 65, 224, and has worked as an

1  accounting clerk, child monitor, job clerk, general officer clerk, shipping clerk, and

2  order clerk.  Tr. 65.  Plaintiff alleges she is unable to work due to significant pain

3  in her neck and back, and pain and swelling affecting all of her joints, testifying to

4  pain that radiates throughout her body and regular numbness in her extremities.

5  Tr. 61

6  ## V.    The ALJ's Findings

7      The ALJ determined that Plaintiff was not disabled under the Social Security

8  Act and denied her applications for SSI and DIB benefits.  Tr. 14-24.

9      **At step one**, the ALJ found that the Plaintiff had not engaged in substantial

10  gainful activity since October 1, 2008, the date on which she alleges onset of her

11  disability.  Tr. 16.

12      **At step two**, the ALJ found Plaintiff had the following severe impairments:

13  fibromyalgia, possible lupus, degenerative disc disease of the cervical and lumbar

14  spine, osteoarthritis of the right knee, obesity, and "status post surgeries." Tr. 16.

15      At **step three**, the ALJ found that Plaintiff did not have an impairment or

16  combination of impairments that meets or medically equals the severity of one of

17  the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1.  Tr. 17 (citing

18  404.1520(d), 404.1525, and 404.1526).

19      At **step four**, the ALJ found Plaintiff had the residual functional capacity to

20  perform sedentary work with the caveat that "she can lift and carry 10 pounds

occasionally and less than 10 pounds frequently." Tr. 17  The ALJ also found that

Plaintiff can stand and walk for a total of two hours and sit for a total of six hours

in an eight hour workday.  Tr. 17.  In addition to a restriction to sedentary work,

the ALJ found that Plaintiff can frequently balance and occasionally climb ramps

and stairs, and stoop, kneel, crouch, and crawl, but must avoid climbing ladders,

ropes, and scaffolds; concentrated exposure to hazards such as heights and

dangerous moving machinery; and concentrated exposure to extreme heat.  Tr. 17.

Vocational expert Kimberly Mullinax testified at the hearing that an individual

with the residual functional capacity assessed by ALJ Valente could perform

Plaintiff's past relevant work as an account clerk and an order clerk.  Tr. 65.

At **step five**, the ALJ found in the alternative, after considering her age,

education, work experience, and residual functional capacity, that Plaintiff is

capable of making a successful adjustment to other work that exists in significant

numbers in the national economy.  Tr. 23-24.

## VI.    Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error

and not supported by substantial evidence. ECF No. 13 at 2.  Specifically, Plaintiff

contends that the ALJ erred by (1) improperly according "limited weight" to the

opinions of treating physicians Jane Park, M.D., and Stephen P. Roesler, M.D.; (2)

failing to provide legally adequate reasons for rejecting Plaintiff's testimony with

1  respect to the intensity, persistence, and limiting effect of her impairments as not

2  entirely credible; and (3) improperly assessing Plaintiff's residual functional

3  capacity resulting in a finding that Plaintiff can perform both her past relevant

4  work and other jobs existing in significant numbers in the national economy.  ECF

5  No. 13 at 13.

## VII.   Discussion

**A.    The ALJ Properly Discounted Plaintiff's Testimony Concerning her own Limitations as not Entirely Credible**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged.  *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and

other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of

treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273,

1284 (9th Cir.1996).

 The ALJ found that the claimant's medically determinable impairments

could reasonably be expected to cause some of the alleged symptoms, but that the

claimant's statements concerning the intensity, persistence, and limiting effects of

these symptoms were not entirely credible.  Tr. 18.  Plaintiff testified that she could

sit for fifteen to twenty minutes and stand for only fifteen minutes at one time.  Tr.

47-48.  Plaintiff testified further that she had difficulty lifting, Tr. 46, would need

to rest for fifteen to twenty minutes after standing, Tr. 48, and would miss four to

six days of work per month because of lupus or fibromyalgia "flare ups."  Tr. 62.

 Plaintiff argues that the ALJ failed to provide legally adequate reasons for

finding that Plaintiff's account of her own limitations was not entirely credible.

ECF No. 13 at 25-30.  Contrary to Plaintiff's arguments, however, the ALJ

provided several legally sufficient reasons for discounting Plaintiff's account of

her own limitations, each of which is supported by substantial evidence in the

record.

\\

\\

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~
10**

### 1.    Activities During the Period of Disability

As the Commissioner notes, ECF No. 15 at 8, the ALJ discussed a number of activities which were inconsistent with Plaintiff's account of her own limitations. Tr. 18-19. First, although Plaintiff testified that she had difficulty lifting, Tr. 46, Plaintiff reported that she was working as a childcare provider throughout much of the period of disability. Tr. 39-40, 215, 244, & 601. In a work history report dated August 24, 2011, Plaintiff indicated that she provided childcare services including bathing, cooking, cleaning, prepping bottles, changing diapers, running errands, and picking up kids. Tr. 244. In that same work history report, she indicated that was able to lift and carry a small child off and on throughout the day. Tr. 244.

Plaintiff gives varying accounts of the frequency and duration of her childcare activities in 2009, ranging from as much as four days per week for four to six hours per day, Tr. 244, to as little twelve hours per month, Tr. 215. Regardless of the frequency and duration of these activities, however, Plaintiff's ability to lift even very small children to bathe and change them on a regular basis undermines her assertion that she has significant difficulty lifting. Moreover, the record reflects that as recently as October of 2011, Plaintiff was caring for a two-year-old boy on a daily basis. Tr. 601. Contrary to Plaintiff's complaints that these activities are not inconsistent with her testimony that she has difficulty using

1   her hands, ECF No. 13 at 26, the fact that Plaintiff was able to bathe, cook, and

2   clean for a small child for several hours at a time contravenes her claims that

3   difficulty using her hands contributes to an inability to work.

4        Plaintiff also contends that the activities cited by the ALJ are not

5   inconsistent with Plaintiff's testimony that she could only sit and stand for brief

6   periods of time.  ECF No. 13 at 26.  Despite her claims that she could only stand

7   for fifteen minutes, however, records from 2009 indicate that Plaintiff was walking

8   two miles per day for exercise.  Tr. 336.  Moreover, notwithstanding Plaintiff's

9   claim that she could sit for a maximum of twenty minutes at one time, she was able

10  to travel significant distances from her residence in Yakima, Washington.  Plaintiff

11  traveled to Portland in August of 2009, Tr. 386, and again in September of 2010,

12  Tr. 589, New Orleans in November of 2011, Tr. 438, and to the beach for a family

13  reunion, Tr. 57.  Plaintiff also took annual trips to Lake Roosevelt, most recently

14  during the summary of 2011, Tr. 56-57, and commuted to Seattle for medical

15  appointments.  Tr. 732.  Plaintiff's testimony at the hearing indicated that Lake

16  Roosevelt is approximately a four-hour drive from Plaintiff's residence, Tr. 56-57,

17  and that the drive to the family reunion was two and a half to three hours, Tr. 57.

18  This length of trip is clearly inconsistent with an inability to sit for more than

19  twenty minutes at a time.

20

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 12**

Although Plaintiff argues that the ALJ disregarded her testimony that she has good and bad days, Tr. 62, the extensive activities in which Plaintiff engaged are inconsistent with her most positive assessment of her own functioning. Plaintiff testified that even on a good day, she could only sit or stand for, at most, twenty minutes at a time. Tr. 48.  Plaintiff provides no explanation, however, for how she was able to travel to New Orleans, take long car trips, or walk two miles per day given her assessment that, on a good day, she was unable to sit or stand for even a small fraction of the time it takes to engage in these activities.  In light of Plaintiff's extensive activities during the period of disability, the ALJ reasonably concluded that Plaintiff's level of activity was inconsistent with her allegations concerning the intensity, persistence, and limiting effects of her impairments.

### 2.    Lupus and Fibromyalgia Diagnoses

The ALJ also noted that the medical evidence does not substantiate Plaintiff's allegations concerning the extent of her limitations.  Tr. 19.  With respect to Plaintiff's fibromyalgia and lupus, the ALJ pointed out that the record does not reflect significant change in either of these diagnoses that would precipitate a decline in Plaintiff's functional ability.  *Id.*  Prior to Plaintiff's October 1, 2008 onset date, records indicate that Plaintiff was "doing fairly well" with stable symptoms including mild polyarthralgia and approximately thirty minutes of stiffness in the morning.  Tr. 317, 320, & 323.  A treatment note from

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 13**

1    Yong Zhu M.D. dated April 18, 2008, indicates that Plaintiff presented with mild

2    lupus, including persistent polyarthralgia and very minimal morning stiffness, but

3    was otherwise doing fine.  Tr. 321.

4         Records from after Plaintiff's alleged onset date reveal little, if any, decline

5    in Plaintiff's condition.  On December 2, 2008, Jun Lu M.D. noted that Plaintiff's

6    symptoms included nothing more than morning stiffness and tenderness to

7    palpation in her hands, ankles, and shoulder.  Tr. 329.  Dr. Lu also indicated that

8    Plaintiff's lupus diagnosis was questionable given her "serologies."  *Id*.  Records

9    from March of 2009 indicate that Plaintiff was doing very well overall, despite

10   occasional redness and swelling in her hands and toes.  In June of 2009, despite

11   Plaintiff's reports of "all-over body pain" and positive tenderness at fibromyalgia

12   tender points, there was no synovitis, swelling, or erythema.  Tr. 334.  In

13   September, Plaintiff still complained of "overall body pain" but reported that she

14   was still able walk two miles per day.  Tr. 336.

15        Treatment notes from January of 2010 indicate that although Plaintiff

16   reported some decreased energy, her symptoms were stable and her lupus was

17   "well controlled."  Tr. 338.  Evaluations by Jane Park M.D. on September 13,

18   2011, Tr. 1013-17, February 7, 2012, Tr. 1018-22 and July 24, 2012, Tr. 1023-27,

19   again questioned whether Plaintiff actually suffered from lupus, and indicate that at

20   worst that her lupus was "quiescent," Tr. 1015.  In her most recent evaluation at

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~
14**

1    the University of Washington Medical Center, Dr. Park indicated that Plaintiff's

2    grip was normal, and that she exhibited only mild soft tissue swelling in her hands.

3    Tr. 1024.  The consistency of Plaintiff's fibromyalgia and lupus symptoms both

4    before and after her alleged onset date weakens her claims that she became

5    disabled on October 1, 2008.

6         Although Plaintiff is correct that the record also contains some evidence

7    regarding her lupus and fibromyalgia diagnoses that is consistent with her

8    symptom testimony, the Court cannot substitute its judgment for the ALJ's.  *See*

9    *Matney*, 981 F.2d at 1019.  Where, as here, the evidence is susceptible to more

10   than one rational interpretation, one of which supports the ALJ's conclusion, the

11   ALJ's conclusion must be upheld.  *See Thomas*, 278 F.3d at 954.

12        **3.  Inconsistent Statements**

13        In addition to the inconsistencies between the Plaintiff's treatment records

14   and activities on the one hand, and Plaintiff's testimony on the other, the ALJ also

15   pointed to Plaintiff's inconsistent statements regarding the extent of her work

16   activity during the alleged period of disability.  Tr. 21.

17        In particular, the ALJ noted several inconsistencies concerning Plaintiff's

18   account of her work activity as a childcare provider.  Plaintiff testified at the

19   hearing that she worked as a self-employed babysitter for "a six-month time

20   period," Tr. 39, but in an August 24, 2011, work history report Plaintiff indicated

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~**
15

1   that she was a daycare provider from January of 2009 until December of 2009, Tr.

2   244. Although, Plaintiff's testimony suggested that she did little more than change

3   diapers and provide snacks, Tr. 40, the same 2011 work history report indicated

4   that her tasks included bathing, prepping bottles, changing diapers, cooking,

5   cleaning, picking up kids, and running errands, Tr. 244.

6        In addition, the ALJ pointed to discrepancies between Plaintiff's accounts of

7   the extent and duration of her childcare activities during the period of disability.

8   Although Plaintiff initially reported that she provided childcare for a couple of

9   days per month with approximately twelve hours of monthly work activity, Tr.

10  215, she subsequently related that she did so four days a week for four to six hours

11  per day, Tr. 244. Moreover, Plaintiff claimed at the hearing that she did not work

12  after 2009, but medical records from 2011 indicate that she reported caring for a

13  two-year-old boy on a daily basis.

14       In light of these inconsistent statements, the ALJ's conclusion that the

15  "inconsistencies surrounding [Plaintiff's] work activity reduce her overall

16  credibility" is entirely reasonable. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148

17  (9th Cir. 2001) ("In assessing the claimant's credibility, the ALJ may use ordinary

18  techniques of credibility evaluation, such as considering the claimant's reputation

19  for truthfulness and any inconsistent statements in her testimony.") (internal

20  quotation marks omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~
16**

2002) (holding that a "lack of candor" regarding drug and alcohol abuse was

relevant to the credibility of the claimant's allegations concerning her physical

pain).

In short, the discrepancy between Plaintiff's level of activity and her account

of her own limitations, the lack of noticeable decline in Plaintiff's lupus and

fibromyalgia diagnoses around the alleged onset date, and Plaintiff's inconsistent

statements regarding the extent and duration of her childcare services renders the

ALJ's adverse credibility finding appropriate. Although standing alone each of

these justifications might be insufficient, when considered together they constitute

the requisite "clear and convincing" reasons required to find that a Plaintiff was not

entirely credible. *See Rogal v. Colvin*, 590 F. App'x 667, 670 (9th Cir. 2014)

(holding that the appellant's return to work shortly after his first car crash,

although not dispositive, was sufficient to support the ALJ's finding that he was

not credible when considered in conjunction with evidence that both his activities

and his course of treatment were inconsistent with his alleged limitations).

**B.    The Opinions of Dr. Park and Dr. Roesler**

As an initial matter, Plaintiff contends that the ALJ erred by failing to accord

"controlling weight" to the opinions of Dr. Park and Dr. Roesler. ECF No. 13 at

16-19. Pursuant to SSR 96-2p, 1996 WL 374188 (1996), "[i]f a treating source's

medical opinion is well-supported and not inconsistent with the other substantial

1   evidence in the case record, it must be given controlling weight; i.e., it must be

2   adopted."  Here, as discussed in greater detail below, *see infra* pp. 19-24, the

3   limitations assessed by Dr. Park are inconsistent with Plaintiff's treatment history

4   and account of her own activities during the period of disability.  Similarly, the

5   limitations assessed by Dr. Roesler conflict, to a degree, with Plaintiff's testimony

6   regarding the extent of her own limitations.  *See infra* p. 27.  Moreover, non-

7   examining physician Guthrie Turner, M.D. supplied an opinion that reflects

8   significantly less limitation than assessed by Dr. Park and Dr. Roesler.  Tr. 107-09,

9   119-21.  Because the opinions of Dr. Park and Dr. Roesler are "inconsistent with

10  other substantial evidence in the case record," the ALJ did not err in refusing to

11  accord them controlling weight.  *See* SSR 96-2p, 1996 WL 374188 (1996).

12      Plaintiff also claims that the ALJ failed to set forth adequate reasons for

13  according limited weight to Dr. Park's and Dr. Roesler's opinions, and that in any

14  case, the ALJ's conclusion is not supported by substantial evidence.  ECF No. 13

15  at 19-24.

16      The Ninth Circuit has distinguished between three classes of physicians in

17  defining the weight to be given to their opinions: (1) treating physicians, who

18  actually treat the claimant; (2) examining physicians, who examine but do not treat

19  the claimant; and (3) non-examining physicians, who neither treat nor examine the

20  claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A treating

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~
18**

physician's opinion is given the most weight, followed by an examining physician, and then by a non-examining physician. *Id.* at 803-831. In the absence of a contrary opinion, a treating or examining physician's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id.* at 830. If contradicted, a treating or examining doctor's opinion can be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. The controverting opinion of a non-examining physician, however, does not by itself constitute substantial evidence justifying the rejection of a treating or examining physician's opinion. *Id.* at 831.

### 1.     The ALJ Properly Accorded Limited Weight to Dr. Park's Opinion

Dr. Park prepared two medical source statements in January of 2013 providing opinions regarding Plaintiff's work-related physical limitations arising from her lupus and fibromyalgia diagnoses. Tr. 936-44. Dr. Park opined that Plaintiff could walk for one block without rest, and could only sit for fifteen minutes and stand for fifteen to twenty minutes at one time. Tr. 938. Dr. Park opined further that Plaintiff could stand for less than two hours and could only sit for approximately two hours total in an eight-hour workday. *Id.* As indicated by vocational expert testimony, these limitations alone would preclude Plaintiff's full time employment. Tr. 69. Dr. Park also assessed a number of additional work-

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 19**

related limitations each of which, according to vocational expert testimony, Tr. 68-69, would preclude all employment: (1) limitations on handling, grasping, and fine manipulation to less than 5% of the workday, Tr. 939; (2) Plaintiff would be "off-task" approximately 25% of the day, Tr. 940; and (3) Plaintiff would miss approximately four days of work per month, Tr. 940.

In according "limited weight" to Dr. Park's opinion, ALJ Valente reasons that (1) Dr. Park saw Plaintiff on "only four occasions between September 2011 and January 2013," (2) Dr. Park's treatment records are inconsistent with her opinion regarding the severity of Plaintiff's limitations, (3) the limitations assessed by Dr. Park in her opinion are inconsistent with Plaintiff's testimony concerning her own activities, and (4) Dr. Park's assessments of Plaintiff's limitations are based on Plaintiff's self-reports which the ALJ found to be "not entirely credible." Tr. 18, 21-22.

Plaintiff contends that in reaching this conclusion the ALJ "mischaracterized the record" by cherry-picking evidence supporting a finding of nondisability and thus, failed to properly evaluate the record as a whole. ECF No. 13 at 19. Plaintiff argues that the ALJ disregarded extensive treatment records from Dr. Park, which document Plaintiff's severe symptoms, in an attempt to minimize Plaintiff's limitations. *Id*. at 20. Plaintiff's argument is unavailing, however, because the

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 20**

1    ALJ provided the requisite specific and legitimate reasons for discounting her

2    opinion, each of which is supported by substantial evidence in the record.

3        To begin, Dr. Park's treatment records reveal relatively mild assessments of

4    Plaintiff's condition that belie the significant limitations described in her opinion.

5    Although Dr. Park does note some soft-tissue swelling in Plaintiff's hands, Tr.

6    1019, 1024, Dr. Park's treatment notes indicate that Plaintiff consistently had "no

7    synovitis" in her extremities, Tr. 598, 1019, & 1024, and that she is not suffering

8    from carpel tunnel syndrome despite a positive Tinel's sign, Tr. 1028.  In addition,

9    Dr. Park's notation that Plaintiff had normal grip strength, Tr. 1024, stands in stark

10   contrast to her opinion that Plaintiff should be limited to handling, grasping, and

11   fine manipulation less than 5% of the workday.  Tr. 939.  Dr. Park's treatment

12   notes also indicate on several occasions that, contrary to her opinion that Plaintiff's

13   lupus contributed to significant limitations, there was no objective evidence

14   corroborating a lupus diagnosis.  Tr. 598, Tr. 1019, & 1024.  Given the relatively

15   benign assessment of Plaintiff's condition contained in Dr. Park's records, it was

16   not unreasonable for the ALJ to conclude that the significant work-related

17   restrictions imposed by Dr. Park's opinion, including an inability to sit for longer

18   than 15 to 20 minutes consecutively, were inconsistent with Dr. Park's

19   examinations of Plaintiff.

20

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~
21**

1    Dr. Park's opinion is similarly inconsistent with Plaintiff's own testimony

2    concerning her activity during the period of disability.  In particular, Plaintiff's

3    ability to travel significant distances conflicts with Dr. Park's opinion that Plaintiff

4    can only sit for 15-20 minutes at a time.  As discussed above, *see supra* p. 12, the

5    fact that Plaintiff traveled to New Orleans, and was able to take four-hour car trips

6    is simply incompatible with an assessment that she cannot sit for more than twenty

7    minutes at a time.

8    Moreover, Plaintiff's activities of daily living suggest that Plaintiff is less

9    limited than opined by Dr. Park.  Specifically, Plaintiff walked two miles a day in

10    2009, Tr. 336, and through October of 2011, was able to care for a two-year-old

11    boy on a daily basis, Tr. 601.  Plaintiff's ability to carry on these activities serves

12    to further undermine Dr. Park's opinion that Plaintiff suffers from the significant

13    limitations identified in the medical source statements.

14    Finally, it is clear that Dr. Park's assessment of Plaintiff's limitations is based

15    largely on Plaintiff's self-reports, which, as discussed above, *see supra* pp. 9-17,

16    the ALJ properly dismissed as not entirely credible.  To begin, review of Dr. Park's

17    treatment records reveals that the majority of her notations concerning Plaintiff's

18    condition during examinations, in particular those which indicate a negative

19    prognosis, are based on Plaintiff's self-reports rather than objective testing.  *See*,

20    *e.g.*, Tr. 1013 ("[Plaintiff] does state she has had a couple of 'flares'), Tr. 1018

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 22**

("[Plaintiff] reports she has been doing very poorly"), & Tr. 1023 ("[Plaintiff] states that she has had 2 'flares' since her last visit.").  Moreover, and perhaps more importantly, Dr. Park's assessment of Plaintiff's limitations with respect to durational restrictions on standing, sitting and walking, the number of days Plaintiff would be away from work per month, and the need for unscheduled breaks aligns almost perfectly with Plaintiff's suspect account of her own limitations.  *Compare* Tr. 936-940 *and* Tr. 941-944 (indicating that Plaintiff (1) could stand for fifteen to twenty minutes and sit for fifteen minutes at one time, (2) would need to take a ten or fifteen minute break every fifteen minutes, and (3) could walk only a block before needing rest) *with* Tr. 47-48 (Plaintiff's testimony that she could stand for fifteen or twenty minutes but would need to rest for 15 or 20 minutes after doing so), Tr. 53 (Plaintiff's testimony that she could sit for 15 to 20 minutes at a time), *and* Tr. 60 (Plaintiff's testimony indicating that she could walk "a little less than a block" before needing to stop and rest).  Because ALJ Valente reasonably discounted Plaintiff's credibility, her rejection of the significant portions of Dr. Park's opinion based upon Plaintiff's self-reports was legally proper.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.").

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 23**

1    In sum, the record supports ALJ Valente's conclusion that Dr. Park's

2    opinion should be accorded limited weight.  The significant limitations contained

3    in Dr. Park's opinion are not only inconsistent with Plaintiff's testimony regarding

4    her activities during the period of disability, but also with Dr. Park's own treatment

5    notes, which reveal a relatively mild assessment of Plaintiff's condition.  The

6    inconsistencies identified by ALJ Valente constitute the requisite "specific and

7    legitimate" reasons required to discount a treating physician's opinion where, as

8    here, that opinion is contradicted.  Accordingly, the ALJ's decision to accord

9    limited weight to the opinion of Dr. Park is free of error.

10   **2.    The ALJ Improperly Accorded Limited Weight to the Opinion of Dr.**

11   **Roesler**

12   Dr. Roesler completed a medical source statement in which he opined that

13   Plaintiff could barely walk with a walker—indicating that she could walk only a

14   quarter block before needing rest—and could sit for only one hour and stand for

15   only five minutes at one time.  Tr. 946.  Dr. Roesler also opined that Plaintiff could

16   sit for only two hours and stand for less than two hours in an eight-hour workday,

17   would need hourly breaks, and would be off-task for 25% of the day.  *Id.*

18   The ALJ accorded little weight to the opinion of Dr. Roesler because his

19   opinion (1) is inconsistent with Plaintiff's treatment history and performance on

20   physical examinations, (2) is inconsistent with Plaintiff's daily activities, and (3)

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~**
24

was given immediately after Plaintiff's right knee surgery in January of 2013 with

no indication that the limitations were expected to last for twelve months.  Tr. 21-

22.  Plaintiff is correct, to a degree, in arguing that the ALJ's reasoning is not free

of legal error or supported by substantial evidence.

Dr. Roesler began treating Plaintiff after an MRI in August of 2012 revealed

a possible tear of the anterior cruciate ligament and noted osteoarthritic changes in

the medial and lateral joint compartments of Plaintiff's right knee.  Tr. 842.

Following up on this assessment, Plaintiff visited Dr. Roesler in October of 2012,

who, based on his findings, recommended a second knee surgery which occurred

in January of 2013.  Tr. 950.

Although there is some indication that Dr. Roesler's opinion is inconsistent

with Plaintiff's performance on physical examinations conducted around the time

he treated Plaintiff, *see* Tr. 817 (Plaintiff was ambulatory without assistance upon

discharge) and Tr. 829 (Plaintiff's physical examination revealed normal range of

motion in her lower extremities), other records, including those directly related to

Plaintiff's knee condition, provide a more serious prognosis, *see* Tr. 837

(tenderness to palpitation in Plaintiff's right knee), Tr. 845 (limited range of

motion and moderate effusion of right knee).  Dr. Roesler's own records, unlike

Dr. Park's, corroborate the significant limitations assessed in his opinion,

indicating that Plaintiff has reduced range of motion, marked tenderness of the

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~
25**

1    patella, and experienced "pain with any motion." Tr. 950. In fact, Dr. Roesler's

2    examinations of Plaintiff's right knee led him to conclude that it was of sufficient

3    severity to warrant a knee replacement. Tr. 949. Although Dr. Roesler ultimately

4    determined during surgery that a knee replacement was unnecessary, the surgery

5    revealed arthritic degeneration of the patella and the lateral compartment of the

6    knee, as well as a lateral meniscal tear. Tr. 954. These findings are completely

7    uncontradicted, and could certainly result in the significant limitations assessed by

8    Dr. Roesler when considered together with limitations arising from Plaintiff's other

9    maladies.

10          Furthermore, despite the ALJ's suggestion that Dr. Roesler's opinion

11    conflicts with Plaintiff's activities during the period of disability, none of the

12    activities cited in her decision occurred during the time period in which Plaintiff

13    was being treated by Dr. Roesler. *See* Tr. 18-19. While certainly activities such as

14    walking two miles a day, providing daily childcare services, and engaging in

15    significant travel would tend to contradict Dr. Roesler's assessment of the

16    significant limitations contained in his medical source statement, there is no

17    evidence that any of these activities were undertaken during the time he treated

18    Plaintiff. Accordingly, Plaintiff's participation in these activities has little, if any,

19    bearing on the accuracy of Dr. Roesler's opinion, at least as it applies to the time

20    period during which he treated Plaintiff.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~
26**

1       Finally, the ALJ completely fails to explain the basis for her conclusion that

2   "there [was] no indication that the limitations [assessed by Dr. Roesler] were

3   expected to last for twelve months."  It is true that the ALJ's point regarding the

4   duration of the limitations assessed by Dr. Roesler is not completely baseless, as

5   Plaintiff's own testimony at the hearing only a month later suggests some

6   improvement in her ability to stand.  *Compare* Tr. 47-48 (Plaintiff's testimony that

7   she could stand for a maximum of twenty minutes) *with* Tr. 946 (indicating that

8   Plaintiff is limited to standing for only five minutes at one time).  ALJ Valente,

9   however, does not even discuss this discrepancy, and offers only her conclusion

10  that Plaintiff's limitations would not last for twelve months.  This conclusion is

11  directly contradicted by the content of Dr. Roesler's opinion, which specifically

12  indicates that Plaintiff's impairments lasted or could be expected to last for at least

13  twelve months.  Tr. 945.

14      As the above discussion illustrates, the reasons identified by ALJ Valente for

15  rejecting Dr. Roesler's opinion—as far as it applies to the period during which

16  Plaintiff was treated by Dr. Roesler—are not supported by substantial evidence.

17  Moreover, the limited explanation provided by ALJ Valente as to why the

18  limitations assessed by Dr. Roesler would not last for twelve months fails to offer a

19  substantive basis for her assignment of limited weight to his opinion, and

20  accordingly is similarly in error.  *See Garrison v. Colvin*, 759 F.3d 995, 1012-13

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~
27**

1  (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it

2  little weight while doing nothing more than . . . criticizing it with boiler plate

3  language that fails to offer a substantive basis for his conclusion.").

4  **C. The ALJ Improperly Assessed Plaintiff's Residual Functional Capacity**

5  Because the ALJ improperly accorded limited weight to the opinion of Dr.

6  Roesler, the ALJ's residual functional capacity assessment does not accurately

7  reflect Plaintiff's limitations, and consequently is in error.  *See* 20 C.F.R. §

8  404.1545(a)(2) (requiring an ALJ to consider all medically determinable

9  impairments when assessing a claimant's residual functional capacity).  As a result,

10  the vocational expert's testimony in response to the hypotheticals posed by the

11  ALJ does not adequately address the functional limitations associated with

12  Plaintiff's impairments.  Accordingly, the ALJ's conclusions—in reliance upon

13  vocational expert testimony in response to the flawed hypotheticals—that Plaintiff

14  is capable of performing her past relevant work, and adjustment to other work that

15  exists in significant numbers in the national economy is similarly in error.

16  **D. The Court Remands for Further Administrative Proceedings**

17  Given the ALJ's error in rejecting Dr. Roesler's opinion, the only remaining

18  question is whether to remand for further administrative proceedings or simply for

19  payment of benefits.  "Where the Commissioner fails to provide adequate reasons

20  for rejecting the opinion of a treating or examining physician, we credit that

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 28**

opinion 'as a matter of law.'" *Lester*, 81 F.3d at 834 (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)). Similarly, "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, '[the court] will not remand solely to allow the ALJ to make specific findings regarding that testimony.'" *Id.* (quoting *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1401 (9th Cir. 1988)). Case law dictates that remand for an award of benefits is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting a medical opinion;
> (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and
> (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

Here, although crediting Dr. Roesler's opinion would result in a finding that Plaintiff is disabled, *see* Tr. 69-70 (indicating that a hypothetical claimant who was off task 25% percent of the work day, would miss four days a week per month, and could not sit and stand for a total eight-hours in one day would be precluded from full time employment), the question remains as to when those disabling limitations arose. Dr. Roesler's treatment of Plaintiff appears to stem from an MRI conducted in August of 2012 which revealed additional problems with the right knee, Tr. 842,

but his opinion is blatantly inconsistent with many of the activities Plaintiff herself

indicates she undertook prior to receiving treatment from Dr. Roesler.  Given this

inconsistency, in conjunction with the fact that Dr. Roesler's first examination of

Plaintiff was four years after her alleged onset date, it is evident that Dr. Roesler's

opinion is inapplicable to Plaintiff's condition at the alleged onset of disability in

October of 2008.  However, after the MRI in August of 2012 identifying additional

knee problems, there is little evidence that would warrant discounting of Plaintiff's

treating orthopedic surgeon.  In light of the remaining question regarding when the

limitations assessed by Dr. Roesler arose, this Court remands the case for proper

consideration of his opinion, and for a determination of whether, in light of

limitations assessed by that opinion, an amended onset date would be appropriate.

## VIII.  Conclusion

For the foregoing reasons, the Court finds the Commissioner's decision is

not free of legal error or supported by substantial evidence.  Therefore, Plaintiff's

Motion for Summary Judgment is granted in part, and this matter is remanded for

additional proceedings.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**
**in part and DENIED in part.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED.**

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY**
**JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~**
30

3. The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

4.  This matter is **REMANDED** for additional proceedings.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and **CLOSE** the file.

**DATED** this 7th day of January, 2016.


_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~**
31